IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH INSTAGRAM USER ID **img_yungtez,** THAT IS STORED AT PREMISES CONTROLLED BY INSTAGRAM, LLC | ) ) ) ) Case No. 1:20-mj-145 ) ) ) **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Alicia Larkins, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives, being first duly sworn, hereby depose and state as follows:

**Introduction and Agent Background**

1. I make this affidavit in support of an application for a search warrant for information associated with img_yungtez (the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, ("Instagram") a social-networking company owned by Facebook, Inc. and headquartered in San Francisco, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), (b)(1)(A), and (c)(1)(A), to require Instagram to disclose to the government records and other information in its possession, including the contents of communications, pertaining to the subscriber or customer associated with the SUBJECT ACCOUNT.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the United States Department of Justice and have been so employed since February 2019. As such, I am an investigative or law enforcement officer of the United States

within the meaning of Title 18, United States Code, Section 2510(7) and am empowered by law to conduct investigations of, and to make arrests for violations of federal laws, including, but not limited to, Title 18, U.S. Code, Section 1962 and Title 21 and U.S. Code, Section 846. In addition to my employment with ATF, I have over 7 years of law enforcement experience with the Prince William County Police Department in Prince William County, Virginia. I spent two years working as a crime analyst in their Criminal Investigative Division, three years working as a uniform patrol officer and two years working as a Detective on their Narcotics Task Force. While employed with Prince William County I attended numerous training in cell phone investigation techniques to include attending the FBI's Basic Mobile Device Investigations and additional training at the National Domestic Communications Assistance Center (NDCAC). I am a graduate of the Prince William County Police Academy which is a certified through the Commission on Accreditation for Law Enforcement Agencies (CALEA), the Federal Law Enforcement Training Center Criminal Investigator Training Program (CITP), and the ATF Special Agent Basic Training (SABT) Program. I have received specialized training with respect to narcotics and firearms violations and have been involved in numerous investigations involving violent crimes and the seizure of firearms and controlled substances. I also have a Bachelor of Science in Government and Justice Studies from Appalachian State University, and a Master of Arts in Criminology and Public Sociology from University of North Carolina Wilmington.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based upon your Affiant's training and experience and participation in investigations involving controlled substances, your Affiant knows that when controlled substances are illegally used, manufactured, and trafficked, other supporting items and materials are usually present in addition to the controlled substances themselves. These supporting items commonly associated with the use of and trafficking of controlled substances include, but are not limited to, drug paraphernalia, scales, and packaging materials suitable for particular substance(s); records and notes (including computer and electronically stored) of controlled substance transactions; money (proceeds of or capital for controlled substance(s) transactions); firearms kept for protection; stolen property (often traded for controlled substances); electronic devices suitable for use in controlled substance transactions, recordings of such transactions, or electronic devices suitable for avoiding law enforcement.

5. It is also common for traffickers of these substances to use electronic communication devices such as cellular telephones, pagers, both numeric and two-way, and computers so that they can conduct their business at virtually any time without unnecessary delay. I know that these devices are usually found on or in very close proximity to these persons and that such electronic devices are capable of storing information such as phone numbers and/or coded messages which may lead to the identity of codefendants, coconspirators, and/or sources of supply. Cellular phones, phone records, device purchase agreements and other related documents related to the ownership are normally kept at their businesses, and/or places of operation. It is also common for them keep their electronic communication devices and cellular telephones in close proximity to themselves, on their person, in their vehicles, or at their business or place of operation. Cellular telephones, in addition to being communication devices, are also storage devices for data. Data electronically stored inside cellular telephones include telephone

numbers of associates, logs of the date and time that individual calls were made, voice and text messages from associates and photographs of the primary user, family members and associates, location information, internet browsing history, calendar entries, task lists, contact information, and other similar data. The data inside cellular telephones is evidence of such sales activity, demonstrates true ownership and control of the telephones, which can be registered to another person, and can be effectively used to corroborate the statements of witnesses. With the advent of "smart phones" all of the documents and information discussed within this section can be held on a smart phone in electronic format as well.

6. Based on training and experience in conducting investigations involving controlled substances, your Affiant also knows that drug dealers, while utilizing electronic communication devices to conduct their business, will often use "slang," or "code words" when referring to their business activities. These code words may include reference to, but are not limited to, money, narcotics, firearms, other co-conspirators, and certain locations. Drug dealers use these code words in an attempt to conceal their illegal activities from law enforcement in an effort to avoid detection. Your Affiant is also aware that specific slang and code words utilized by those trafficking in controlled substances may be influenced by various factors such as geographical area, cultural influences, and the type of controlled substance being trafficked.

7. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C § 922(g)(1), 18 U.S.C § 924(c)(1)(A), 21 U.S.C. 841(a) have been committed by Demontes EARLS (hereinafter EARLS), and others known and unknown. There is also probable cause to search the information described in Attachment A for evidence of these crimes as described in Attachment B.

## JURISDICTION

8. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## Probable Cause

9. On August 18th, 2020 your affiant was contacted by Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), Task Force Officer (TFO) Z. Golowich out of the Atlanta field office in reference to possible criminal activity occurring in Chattanooga, TN. TFO Golowich advised that he had located several social media accounts believed to being used by the same person with the alias "Tez" or "Yung Tez" that appeared to be selling narcotics and firearms in the Chattanooga, TN area.

*Photos of Instagram, SnapChat, and Facebook Profile provided by TFO Golowich:*



TFO Golowich then sent your affiant several photos taken from the Snapchat account listed above that are consistent with an individual selling firearm and narcotics.

*SnapChat Photos provided by TFO Golowich:*



Page **6** of 15

10. Through the use of law enforcement databases, your affiant was able to run a partial vehicle tag in a photo posted to the Instagram account and identify the male as Demontes EARLS. EARLS is a convicted felon and prohibited from possessing firearms and is tied to several addresses in the Chattanooga, TN area. Your affiant compared photos from the multiple social medial profiles to the Tennessee Operators license for Demontes EARLS and confirmed that they were the same person.

11. During the month of August, 2020, a confidential informant (CI) contacted EARLS on the SUBJECT ACCOUNT [img_yungtez] and began messaging with EARLS. EARLS provided the CI with a contact phone number of 423-280-5295 on August 17, 2020. The CI and EARLS have had several recorded conversations in which the two discussed firearms and narcotics sales in the Chattanooga, TN area. EARLS sent the CI the below photo on August 23, 2020 advising the firearm was for sale.

*Photo provided to your affiant from CI:*



12. During the weeks of August 24th, and September 7th, your affiant was present for two controlled purchases from EARLS, where a CI purchased firearms and narcotics at an address in the Chattanooga, TN area. Following the second controlled purchase EARLS posted a photo of what appears to be another male holding cash on his Instagram "story". Additionally, EARLS also "tagged" another male who has been identified as Dionavin SANDERS (aka Instragram profile of _lil.rico_) , who was the source of supply for the firearm for that particular deal. Given the aforementioned history of EARLS social media presence and usage, your affiant believes there is additional information inside the SUBJECT ACCOUNT that may help identify EARLS source of supply for narcotics and firearms in the Chattanooga, TN area.

*Photo taken from img_yungtez Instragram story by your affiant on September 2, 2020:*



13. Your affiant has had numerous social media trainings and has utilized Instagram in an undercover capacity in previous cases. Your affiant is familiar with the social media platform and knows that users of Instagram have the ability to post photos that stay in their feed until they chose to edit or delete them or they can post stories (photos or short videos) to their

stories which disappear after 24 hours. Instagram users can also limit and choose who sees these stories posted to their profile. In your affiant's experience, criminals will often use the stories to post messages that they know have a time specificity for illegal items that they have for sale (e.g. drugs, firearms, etc.) or items they wish to acquire. Additionally, Instagram allows users to message/direct message or "DM" other users using a texting platform, video or just audio platform. Instagram users can also share video and posts from other users. An example would be the photos above where EARLS shared a post that SANDERS made following the controlled purchase of a firearm and narcotics.

14. From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

15. Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

16. Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information. A user can also apply a variety of

"filters" or other visual effects that modify the look of the posted photos. In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram. Users can also "like" photos.

17. Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password. This information is collected and maintained by Instagram.

18. Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram. Once an account is created, users may also adjust various privacy and account settings for the account on Instagram. Instagram collects and maintains this information.

19. Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public. Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles. Instagram collects and maintains this information.

20. Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user. Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

21. Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials. Instagram collects and maintains user content that users post to Instagram or share through Instagram.

22. Instagram users may send photos and videos to select individuals or groups via Instagram Direct. Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

23. Users on Instagram may also search Instagram for other users or particular types of photos or other content.

24. For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app. Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

25. Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram. For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

26. Instagram also collects information on the particular devices used to access Instagram. In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

27. Instagram also collects other data associated with user content. For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags"

that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

28. Instagram also may communicate with the user, by email or otherwise. Instagram collects and maintains copies of communications between Instagram and the user.

29. On September 8th, 2020 I served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the SUBJECT ACCOUNT.

30. As explained herein, information stored in connection with an Instagram account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time. Further, Instagram account activity can show how and when the account was accessed or used. For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and

chronological context of Instagram access, use, and events relating to the crime under investigation. Additionally, Instagram builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner. Last, Instagram account activity may provide relevant insight into the Instagram account owner's state of mind as it relates to the offense under investigation. For example, information on the Instagram account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

31. Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the SUBJECT ACCOUNT, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

### Information To Be Searched And Things To Be Seized

32. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular Title 18, United States Code, Sections 2703(a), (b)(1)(A), and (c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## Conclusion

33. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of violations, or attempted violations, of 18 U.S.C § 922(g)(1), 18 U.S.C § 924(c)(1)(A), and 21 U.S.C. 841(a) may be located in the SUBJECT ACCOUNT described in Attachment A.

34. Based on the forgoing, I request that the Court issue the proposed search warrant.

35. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Instagram. Because the warrant will be served on Instagram, who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

## REQUEST FOR SEALING

36. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

{SIGNATURES ON FOLLOWING PAGE}

Respectfully submitted,

_____
Alicia Larkins
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

SUBSCRIBED and SWORN to before me on this 22nd day of September, 2020

_____
THE HONORABLE SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> INFORMATION ASSOCIATED ) <br> WITH INSTAGRAM USER ID ) <br> **img_yungtez,** ) <br> THAT IS STORED AT PREMISES ) <br> CONTROLLED BY ) <br> INSTAGRAM, LLC ) | Case No. 1:20-mj-145 <br><br> **Filed Under Seal** |

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Instagram profile with username:

**img_yungtez**

that is stored at premises owned, maintained, controlled, or operated by Instagram, LLC, a company that is owned by Facebook, Inc. and headquartered in Menlo Park, California.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF )
INFORMATION ASSOCIATED )
WITH INSTAGRAM USER ID )
**img_yungtez,** ) Case No. 1:20-mj- 145
THAT IS STORED AT PREMISES )
CONTROLLED BY )
INSTAGRAM, LLC ) **Filed Under Seal**

## ATTACHMENT B

**Particular Things to be Seized**

I. **Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A:

    a.    All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

    b.    All past and current usernames associated with the account;

    c.    The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

    d.    All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information **From July 1, 2020 to Present;**

    e.    All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used

to access the account and the date and time of those accesses **from July 1, 2020 to present;**

f. All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes; From July 1, 2020 to present.

g. All communications or other messages sent or received by the account **from July 1, 2020 to present;**

h. All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other **from July 1, 2020 to present;**

i. All photographs and images in the user gallery for the account **from July 1, 2020 to present;**

j. All location data associated with the account, including geotags **from July 1, 2020 to present;**

k. All data and information that has been deleted by the user **from July 1, 2020 to present;**

l. All privacy and account settings;

m. All records of Instagram searches performed by the account, including all past searches saved by the account **from July 1, 2020 to present;**

n. All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

Instagram is hereby ordered to disclose the above information to the government within **14 days** of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C § 922(g)(1), 18 U.S.C § 924(c)(1)(A), and 21 U.S.C. 841(a) involving **Demontes EARLS** since **July 1, 2020**, including, for each username identified on Attachment A, information pertaining to the following matters:

(a) "the sale of illegal drugs", "the possession of firearms", "the acquisition and illegal distribution of firearms", "communication in reference to the sale of illegal narcotics", "communication in reference to the sale of firearms".

(b) Evidence indicating how and when the Instagram account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Instagram account owner;

(c) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

(d) The identity of the person(s) who communicated with the user ID about matters relating to the illegal possession of firearms and narcotics, including records that help reveal their whereabouts.